UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 22-1202 JGB (SPx)** | Date | September 16, 2022 |
| Title | *Michael Thomas Mendoza et al. v. OSI Industries, LLC* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Plaintiffs' Motion to Remand (Dkt. No. 15) and (2) VACATING the September 19, 2022 Hearing (IN CHAMBERS)

Before the Court is a motion to remand filed by Plaintiffs Michael Thomas Mendoza and Rosa Valadez Garcia (collectively, "Plaintiffs"). ("Motion," Dkt. No. 15.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion. The Court **VACATES** the hearing set for September 19, 2022.

## I. BACKGROUND

On April 29, 2022, Plaintiffs, individually and on behalf of similarly situated individuals, filed a Complaint in the Riverside County Superior Court against Defendants OSI Industries, LLC ("OSI"), and Does 1 through 10. ("Complaint," Dkt. No. 3, Ex. A.) On July 11, 2022, OSI removed the action on the basis of diversity jurisdiction and pursuant to the Class Action Fairness Act ("CAFA"). ("Notice of Removal," Dkt. No. 1.)

The Complaint alleges seven causes of action: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) and violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (See Complaint.)

Plaintiffs filed the Motion on August 10, 2022. On August 26, 2022, Defendant opposed the Motion. ("Opposition," Dkt. No. 16.) Plaintiffs replied on September 2, 2022. ("Reply," Dkt. No. 18.)

Defendant filed a request for judicial notice on August 26, 2022. ("RJN," Dkt. No. 17.) Plaintiff opposed the RJN on September 2, 2022.[1] (Dkt. No. 18-1.)

## II. LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but

---

[1] Because the Court does not rely on the document at issue in the RJN, the RJN is **DENIED AS MOOT**. See Moore v. Rodriguez, 2021 WL 2222590, at *23 (S.D. Cal. June 2, 2021) (denying defendant's request for judicial notice submitted in connection with a motion because the court did not rely on the document's contents).

need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorney's fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

### III.  DISCUSSION

#### A.  CAFA: Exceeding $5,000,000

Plaintiffs move to remand on the ground that Defendant failed to prove by a preponderance of the evidence that the amount in controversy ("AIC") for the class exceeds the $5,000,000 CAFA jurisdictional minimum. (See Mot. at 1.) In its Notice of Removal ("NOR"), Defendant asserts that the AIC requirement under CAFA is satisfied because the maximum potential value of Plaintiffs' claims places at least $7,300,628 in controversy, including attorneys' fees. (NOR ¶ 31.) Defendant estimates that attorneys' fees may be 25% of the potential damages, or $1,460,125.60. (Opp'n at 29.)

**1.  Evidentiary Standard**

As an initial matter, the parties dispute whether the Defendant is required to support its jurisdiction allegations with proof typically considered at summary judgment. Defendant argues that because Plaintiffs contested the amount in controversy through only a facial attack on Defendant's jurisdictional allegations, Defendant is "only required to provide plausible allegations to support CAFA jurisdictional requirements." (Opp'n at 13.) The Court disagrees.

"A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020) (internal quotations and brackets omitted) (quoting Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014)). A factual attack "contests the truth of the . . . allegations" themselves. Id. (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Id. (quoting Ibarra, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700 (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to

"contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence").

Defendant maintains that Plaintiffs make only a facial challenge because they do not "suggest that their claims are actually worth less than $5 million, nor do they submit any evidence challenging Defendant's amount in controversy calculations or reasonable assumptions." (Opp'n at 13). Not so. Plaintiffs directly challenge the truth of Defendant's allegations that all class members worked all of the workweeks available, and that every class member worked five uncompensated hours every workweek for a four-year period. (Mot. at 10-11). Although Plaintiffs do not introduce evidence outside the pleadings, a factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700. Thus, Plaintiffs make a factual attack. Defendant must support its jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context.

### 2. Evidentiary Support

Here, because the Complaint does not state the amount of damages sought, Defendant must prove that the AIC exceeds $5 million. See Ibarra, 775 F.3d at 1197. "Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing Ibarra, 775 F.3d at 1199). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry, 2015 WL 4575018, at *2 (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016).

In calculating the AIC, Defendant relies on the declaration of Carrie Sanchez, the Human Resources Manager at OSI's Riverside facility, who is "familiar and knowledgeable [with] OSI's payroll department." (Sanchez Decl. ¶ 2.) Sanchez declares that she has "access to the payroll records of individuals who are or were employed by OSI as non-exempt employees in the state of California." (Id. ¶ 4.) Sanchez also declares that she "reviewed payroll records for individuals who are or were employed by OSI as hourly-paid and non-exempt employees in the state of California between April 29, 2018, and July 5, 2022." (Id.)

From this review, Sanchez estimates that OSI "employed at least 179 hourly-paid and non-exempt employees in the state of California who received weekly wage statements between April 29, 2018, and July 5, 2022, of which approximately 118 have separated from employment with OSI since April 29, 2019." (Id. ¶ 5.) The employees were "paid a combined weighted average hourly wage rate of $17.32." (Id. ¶ 6.) Sanchez further declares that "OSI employed at least 68 hourly-paid and non-exempt employees . . . who received weekly wage statements between April

29, 2021, and July 5, 2022." (Id. ¶ 7.) Sanchez also states that "OSI in Riverside utilized the services of at least 1,500 temporary workers hired through employment agencies who worked at OSI's Riverside facility between April 29, 2018 and July 5, 2022."[2] (Id. ¶ 8.)

Plaintiffs argue that this information is insufficient because Sanchez does not state that she "reviewed corresponding time records" or "any information whatsoever related to actual violation data." (Mot. at 6.) Sanchez also does not "attach any of the payroll records purportedly reviewed by her to support Defendant's estimates." (Id.) Plaintiffs add that Defendant has ready access to this information and has not claimed that producing the data that they rely upon in making their calculations would be burdensome. (Id. at 10.) Defendant counters that Sanchez based her testimony on "her personal knowledge" and "review of the payroll records" and that parties may submit declarations from knowledgeable employees. (Opp'n at 13 (citing Ibarra, 775 F.3d at 1197).) The Court agrees with Defendant. Defendant need not "support removal with production of extensive business records to prove or disprove liability and/or damages … at this premature (pre-certification) stage of the litigation." Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, at *4–5 (E.D. Cal. May 1, 2007); see also Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017) (rejecting objection over Defendant's alleged failure to provide an adequate foundation for a declaration and violation of Federal Rule of Evidence 1002 (Best Evidence Rule), and finding that the declarant (1) was the Vice President of Human Resources Operations, (2) had access to employee-related information, including personnel files and payroll records, and (3) stated that he reviewed the relevant records). "Where, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011); Bryant v. NCR Corp., 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018).

Defendant offers evidence of the number of employees that constitute the putative class and their average hourly rate of pay. "Based on that evidence, [Defendant may make] reasonable assumptions to calculate the potential liability of the purported class." Torrez, 2017 WL 2713400, at *3; see also Unutoa v. Interstate Hotels and Resorts, Inc., 2015 WL 898512, at *3 (C.D. Cal. Mar. 2, 2015) (finding defendant's evidence, which consisted of a declaration by a Payroll Supervisor stating the number of employees employed during the class period who typically worked eight hour shifts, supportive of assumed rates of violation). The Court concludes that Sanchez's Declaration is sufficiently reliable and constitutes "summary-judgment-type evidence" that, if combined with reasonable assumptions regarding the violation rates, provides an adequate basis for Defendant's AIC calculation. See Ibarra, 775 F.3d at 1198 ("CAFA's requirements are to be tested by consideration of real evidence . . . , using reasonable assumptions underlying the defendant's theory of damages exposure."). The Court addresses the reasonableness of Defendant's assumptions to support its calculations on a claim-by-claim basis.

---

[2] Because both parties do not include damages related to the 1,500 temporary workers in their AIC calculations, the Court need not decide the issue of whether an employer relationship exists between Defendant and the temporary workers. (See Opp'n at 15-16; Reply at 11-12.)

### 3. Overtime Wages (Claim Two)

In calculating an estimated AIC, Defendant assumes that Plaintiffs and the class were not paid five hours of overtime wages per workweek, which amounts to approximately $1,818,600 in unpaid overtime wages.[3] (Opp'n at 20.) Plaintiffs argue that Defendant provides no explanation for their calculations and assumptions. In Plaintiffs' view, "Defendant's assumptions [] fail to consider workdays or workweeks during which class members' shifts were too short to trigger overtime." (Id. at 10-11.) Plaintiffs state that "Defendant also fails to provide any basis for its assumption that every putative class member worked five uncompensated overtime hours every single workweek for a four year period." (Id. at 11.) (emphasis omitted). Additionally, Plaintiffs point out that courts have repeatedly held that assumptions of one hour of missed overtime per pay period are reasonable, based on a plaintiff's allegations of "pattern and practice" violations. Mackall v. Healthsource Glob. Staffing, Inc., 2016 WL 4579099, at *4 (N.D. Cal. Sept. 2, 2016) (citing cases).

However, Plaintiffs' allegation of a "policy and practice implies greater frequency than an allegation of a pattern and practice, as policies tend to be uniformly applied." Wheatley v. MasterBrand Cabinets, LLC, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (quotations omitted). Further, while Plaintiffs argue that Defendant fails to "consider workdays or workweeks during which class members' shifts were too short to trigger overtime," Plaintiffs do not assert whether or how often the putative class members worked shifts too short to trigger overtime or whether class members worked less than all of the available workweeks. Because Plaintiffs allege that "Defendants maintained a policy and practice of not paying Plaintiffs and the Class for all hours worked, including . . . overtime wages," (Compl. ¶ 16), without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds that Defendant's estimate of 5 hours of overtime wages per workweek, which amounts to approximately $1,818,600 in unpaid overtime wages is reasonable. See Mejia v. DHL Express (USA), Inc., 2015 WL 2452755, at *4 (C.D. Cal May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.").

### 4. Minimum Wages (Claim One)

Defendant states that given the "Complaint's limited information and the fact that the minimum wage violations are alleged to have occurred" as a "policy and practice," it is reasonable for Defendant to assume that Plaintiffs seek to recover at least five hours of minimum wage per week which "would place over $770,000 in controversy in connection with Plaintiffs' minimum wage claim."[4] (Opp'n at 19.) Defendant adds that its "estimate is conservative

---

[3] "($25.98 [1.5 x $17.32] overtime rate x 5 hours x 14,000 workweeks)." (Mot. at 10.)

[4] "($11.00 minimum hourly wage rate x 5 hour per week x 14,000 workweeks plus an equal amount in liquidated damages)." (Opp'n at 19.)

because it is based on $11.00 minimum wage," which is the "lowest applicable minimum wage rate in effect during the Putative Class Period." (Opp'n at 18; NOR at 12 n.7.)

Plaintiffs counter that Defendant's assumption of five hours per workweek is unreasonable and not supported by evidence. (Reply at 7.) Plaintiffs argue that a "more reasonable, alternative calculation" is a one hour per workweek assumption. (Id. at 7-8, citing Jauregui v. Roadrunner Transportation Servs., Inc., 28 F.4th 989, 994-995 (9th Cir. 2022) (finding that the defendant's calculation of using the lowest hourly wage rate and assuming a one hour of work a week was reasonable to calculate plaintiff's minimum wage claim).) However, it is unclear whether in Jauregui the plaintiffs alleged that defendants had a policy and practice of failing to pay minimum wages. Here, Plaintiffs allege that Defendants maintained a "systematic, company-wide policy and practice" of failing to pay minimum wages. (Compl. ¶ 4(a).) Defendant's calculations are grounded in the broad allegation that these violations occurred as matters of "policy and practice." See Andrade v. Beacon Sales Acquisition, Inc., 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (holding that allegations that defendants committed wage violations "as [a] matter[] of policy and/or practice" justified assumption of maximum violation rate and wages owed when calculating AIC). "Plaintiff[s] could have, but did not, make more specific allegations to narrow the scale or scope of this controversy." Id. Defendant's calculation is thus reasonable.

### 5. Meal and Rest Period Premiums (Claims Three and Four)

Defendant calculates approximately $2,424,800 as the AIC for the unpaid-meal and rest-break claims. (Opp'n at 21.) To reach this figure, it assumes five meal-period violations and five rest period violations per week per class member.[5] (Id.) Defendant explains that because "Plaintiffs allege Defendant's official policy uniformly prevented Putative Class Members from taking a compliant meal breaks and rest breaks, it is reasonable to assume [Plaintiffs] are claiming Putative Class members were never authorized and permitted the opportunity to take a legally compliant rest period." (Id. at 21.) Plaintiffs counter that Defendant misread the Complaint because although Plaintiffs allege that it was Defendant's "policy and practice" to not provide meal and rest periods, the Complaint also states that Defendant "regularly, but not always" required Plaintiffs and "putative class members to work without providing an uninterrupted meal and rest period." (Reply at 8.) Plaintiffs argue that this means "that not every putative class member" experienced the exact same rate of violations per workweek" and proposes that the Court use a "one meal and one rest period violation" per week. (Id. at 8-9.) But Plaintiffs fail to explain why their use of "regularly, but not always" language should trump their use of "policy and practice" in the Complaint.

---

[5] "Defendant calculated the meal period penalties in controversy as $1,212,400.00 ($17.32 x 5 meal period penalties per week x 14,000 workweeks), and rest period penalties in controversy as $1,212,400.00 ($17.32 x 5 rest period penalties per week x 14,000 workweeks)." (Opp'n at 21.)

Because Plaintiffs allege a "policy" of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per week reasonable.  See Mejia v. DHL Express (USA), Inc., 2015 WL 2452755, at *4 (C.D. Cal May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.").

### 6. Waiting-Time Penalties (Claims Five) and Wage Statement (Claim Six)

Plaintiffs allege that as a "policy and practice," Defendant failed to pay employees all "wages due within the time period specified by California law when employment terminates." (Compl. ¶ 4(d).)  Plaintiffs also allege that, "Defendants maintained a systematic, company-wide policy and practice of . . . [f]ailing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code."  (Id. ¶ 4(e).)  Defendant assumes a violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements.  (Opp'n at 26 and 28.)

While Plaintiffs objects to a 100% violation rate, Defendant's assumption is reasonable and consistent with Plaintiffs' allegations.  Indeed, "[i]f Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations."  Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc., 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019).  That is because "Defendant need only have caused a single violation per pay period for all wage statements to be inaccurate, and need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply."  Id.  Here, Plaintiffs imply a greater frequency of violations than the "pattern and practice" alleged in Noriesta.  See Wheatley v. MasterBrand Cabinets, LLC, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (stating that allegations of "policy and practice implies greater frequency than an allegation of a pattern and practice, as policies tend to be uniformly applied").  Thus, the Court finds as reasonable Defendant's calculation of $490,502.40 for waiting time penalties and $336,600 for wage statement penalties.

### 7. Attorneys' Fees

The Court need not decide the amount of attorneys' fees at stake because the estimated amount in controversy totals $5,840,402.40, which meets CAFA's jurisdictional threshold.

### IV.   CONCLUSION

!

For the reasons above, the Court **DENIES** the Motion. The September 19, 2022 hearing is VACATED.

**IT IS SO ORDERED.**